IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Criminal Case No. 15-cr-00058-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL TODD OSBORN,

    Defendant.

---

### ORDER DENYING MOTION TO QUASH SUBPOENA

---

This matter is before the Court on nonparty Stacey E. Salko's "Customer's Motion to Quash Subpoena of Financial Information." (Doc. # 214.) For the following reasons, the motion is denied.

### I.    BACKGROUND

This matter relates to a criminal case in which Defendant Michael Todd Osborn pleaded guilty and was thereby convicted of wire fraud and money laundering in violation of 18 U.S.C. §§ 2(b), 1343, and 1957. (Docs. ## 3, 76–77, 135.) Mr. Osborn was sentenced to pay a $200 special assessment, $695,000 in restitution, and a $100,000 fine. (Doc. # 135 at 5–6.) The Judgment created a lien (the "Lien") in favor of the United States on all Mr. Osborn's property and rights to property. 18 U.S.C. 3613(c), (f). According to the Government, the remaining balance on Mr. Osborn's Judgment as of May 18, 2023, was $624,056.30, with interest continuing to accrue. (Doc. # 216 at 2.)

This subpoena stems from the Government's investigation into Mr. Osborn's financial conditions and the extent of his assets. Since its initiation in 2022, the investigation has led to more than $150,000 being applied to Mr. Osborn's Judgment. (Doc. # 216-1 at ¶ 2.) That investigation has uncovered evidence that Mr. Osborn has spent hundreds of thousands of dollars on gifts given to Ms. Salko, or otherwise for her benefit. These expenditures include (1) the purchase of a Mercedes G-550 sport ("the Mercedes") by Mr. Osborn and titled to Ms. Salko, (2) a 7-carat diamond engagement ring ("the Ring") purchased by Mr. Osborn and given to Ms. Salko, (3) over $100,000 in payments to Ms. Salko directly (although more than half of these payments purport to be directed towards third parties), and (4) more than $46,000 paid for Ms. Salko's benefit such as for rent, the Mercedes lease, insurance, and mobile phone bills. (Doc. # 211-1; Doc. # 211-2; Doc. # 216-1 at ¶¶ 5–6.)

The Ring was the subject of a writ of execution. (Doc. # 204.) However, when the United States Marshals Service attempted to levy the Ring, Mr. Osborn disclosed that Ms. Salko had pawned the Ring in January 2023 for a $68,000 loan. (Doc. # 211-2 at 1.) Anticipating that Mr. Osborn might not fully account for the disposal of the Ring, a subpoena was served on Ms. Salko—requiring her to testify at a deposition and to produce related documents. (Doc. # 209 at 1–2; Doc. # 211-3 at 1, 4.) Ms. Salko did not appear and did not produce documents. (Doc. # 211-4 at ¶¶ 2, 4.)

Believing that Ms. Salko's financial records held by Wells Fargo may reveal additional information regarding Mr. Osborn's financial condition including the discovery of assets subject to the Lien, the Government served a subpoena to produce Ms.

2

Salko's financial records from May 2021 to the present on Wells Fargo on April 18, 2023. (Doc. # 216-1 at ¶ 7; Doc. # 216-2 at 1–5.) Ms. Salko was sent a copy of the subpoena the same day. (Doc. # 216-3.) Ms. Salko now seeks to quash that subpoena. (Doc. # 214.) The Government filed its Response. (Doc. # 216.) The Court exercises its discretion under D.C.COLO.LCivR 7.1(d) to rule on the Motion without awaiting the benefit of a reply.

## II.     ANALYSIS

Ms. Salko contends that (1) her financial information is protected by the Fourth Amendment's prohibition on unreasonable searches and seizures, (2) the subpoena should be quashed pursuant to the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3410, because the government's purpose in pursuing her financial records is improper, and (3) this Court lacks jurisdiction over her financial records because she is not a party to Mr. Osborn's criminal case. (Doc. # 214 at 3.) The Court will address each argument in turn.

As it pertains to Ms. Salko's Fourth Amendment argument, the Government counters that the Fourth Amendment does not cover an individual's financial records that are held by a third party. (Doc. # 216 at 6–7.) The Court agrees. In *United States v. Miller*, 425 U.S. 435 (1976), the Supreme Court recognized the diminishment or loss of a person's privacy interests where she reveals information to a third party, even in confidence. The Supreme Court reasoned that "[t]he depositor takes the risk, in revealing [her] affairs to another, that the information will be conveyed by that [third party] to the Government . . . even if the information is revealed on the assumption that

3

it will be used only for a limited purpose." *Id.* at 443. Therefore, Ms. Salko's only potential judicial remedy to challenge the subpoena is the RFPA. *See Jones v. Dep't of Air Force*, 947 F. Supp. 1507, 1510–11 (D. Colo. 1996) (explaining that Congress passed the RFPA "as a compromise between a 'bank customer's right of financial privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations.'" (quoting *United States v. Frazin*, 780 F.2d 1461, 1465 (9th Cir. 1986))).

Under the RFPA, the Government may obtain a nonparty's financial records via subpoena if (a) the "subpoena is authorized by law and there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;" (b) proper notice has been sent to the customer on or before the date on which the subpoena was served on the financial institution; and (c) the customer fails to timely seek to quash the subpoena or a court orders that the subpoena is permissible under the RFPA. 12 U.S.C. §§ 3407; 3413(e). Ms. Salko challenges the first requirement—averring that her financial records are not related to a legitimate law enforcement inquiry, but rather the Government's motive is harassment and intimidation. (Doc. # 214 at 3.)

The Court disagrees. As discussed above, the imposition of a restitution order results in a lien in favor of the Government on all of Mr. Osborn's property, and rights to property. 18 U.S.C. § 3613(c), (f). Thus, the Government has an interest in all of the Defendant's property for purposes of enforcing the restitution order and collecting the unpaid debt. The Government may enforce the restitution order in accordance with the practices and procedures for collecting a civil judgment under federal law. 18 U.S.C. §

3613(c); *see also* 28 U.S.C. § 3202 (setting forth procedures to enforce judgments). Under the Federal Debt Collection Procedures Act ("FDCPA"), the Government may have discovery regarding the financial condition of the debtor (the Defendant) in the same manner in which discovery is authorized under the Federal Rules of Civil Procedure in an action on a claim for a debt. 28 U.S.C. § 3015. In turn, Fed. R. Civ. P. 69 permits discovery in aid of execution of a judgment "from any person—including the judgment debtor—as provided in these rules . . . ," and Fed. R. Civ. P. 26 permits discovery relevant to any claim or defense.

Here, the Government's stated purpose for seeking Ms. Salko's Wells Fargo records is to establish what property or rights to property Mr. Osborn has, and whether those assets are held in his name or in Ms. Salko's name. (Doc. # 216-1 at ¶ 7); *see also* (Doc. # 216 at 9–11.) The fact that Ms. Salko is not a defendant in this action is not dispositive. *See* 12 U.S.C. § 3413(e) (making clear that the RFPA applies only to non-parties' financial records*); see also, e.g.*, *United States v. Thomas*, 165 F. Supp. 3d 992 (D. Colo. 2015) (denying a motion to quash a subpoena for nonparties' financial records). In light of the Government's interest, and the evidence of Mr. Osborn's payments to and expenditures on Ms. Salko, the Court finds that the disclosure of information related to her Wells Fargo accounts are relevant to the Government's inquiry into Mr. Osborn's financial condition for the purposes of enforcing the restitution order.

Finally, the Court disagrees with Ms. Salko's argument that it lacks jurisdiction over her records because she is not a party to the instant case. (Doc. # 214 at 3.) The

RFPA specifically contemplates subpoenas, such as this one, pertaining to nonparties. *See* 12 U.S.C. § 3413(e). As discussed above, the subpoena has a proper purpose, and Ms. Salko has not challenged any other aspect of it. Accordingly, the Court denies Ms. Salko's Motion.

### III.   CONCLUSION

For the foregoing reasons, it is ORDERED that nonparty Stacey E. Salko's "Customer's Motion to Quash Subpoena of Financial Information" (Doc. # 214) is DENIED.

DATED: May 23, 2023

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge